### 7969

#### WADE v. SOUTHERN RY.

1. RAILROADS—PUNITIVE DAMAGES.—Where there is evidence tending to show a watchman on a bridge was killed by a passing train by reason of the failure of those in charge of it to obey the slow order in force while the bridge was being repaired, and the block signals, there was no error in refusing motion for nonsuit as to punitive damages.

2. IBID.—EVIDENCE.—THAT PHOTOGRAPHS of the place of an accident on a railroad track were taken some time after the occurrence and had marks on them indicating distances, which were explained, do not render them incompetent.

3. EVIDENCE—CONTRADICTION.—If the matter is the subject of contradiction, a train master may be contradicted as to a statement made to him by an agent of his road, by a bystander without the agent going on the stand.

4. IBID.—DECLARATIONS.—Where similar declarations of a party have been admitted, without objection, admission of another of the same kind is not prejudicial.

5. IBID.—RAILROADS—REPLY.—Where a railroad company sets up as a defense to an action for negligent killing by one claiming to be the wife of deceased, that he was married to another, plaintiff may prove in reply declarations of the wife as alleged by it to the effect that defendant knew she said she had been married to another than deceased.

6. RAILROADS—RELEASE—ISSUE.—Whether the defense of release from liabilty is an admission of liability depends upon the circumstances and is an issue for the jury.

   *Rookard* v. *Ry.,* 84 S. C., 192, *distinguished from this case.*

7. NEGLIGENCE.—Charge here complained of, held not to have instructed the jury what acts constitute negligence.

Before MEMMINGER, J., Richland, December, 1909. Affirmed.

Action by J. P. Wade, as administrator of Theo. P. Wade, against Southern Railway Company and J. C. Reeder. Defendants appeal.

*Mr. E. M. Thompson,* for appellants, cites: *Photographs as evidence:* 69 S. C. 104; 57 S. C. 448. *Contradiction:* 6

Ency. Ev. 451; 65 S. C. 5. *Obtaining release no admission of liability:* 34 Cyc. 1078; 74 S. C. 143; 84 S. C. 192; 23 Ency. 533; 53 Am. St. R. 466. *Judge instructed jury what facts constitute negligence:* 71 S. C. 159; 51 S. C. 461; 53 S. C. 452.

*Messrs. W. Boyd Evans, E. J. Best, George R. Rembert* and *L. D. Melton,* contra. *Mr. Evans* cites: *Defendants were guilty of reckless disregard of rights of an employee:* 65 S. C. 122, 440, 438; 67 S. C. 136; 54 S. C. 575; 60 S. C. 74; 64 S. C. 519; 65 S. C. 515; 65 S. C. 189. *Presumption is deceased was exercising due care:* 63 S. C. 494; 25 S. C. 60; 21 S. C. 499; 10 A. & E. R. Cas., N. S. 584; 163 U. S. 366. *Duty to one rightfully on track:* 32 Mo. App. 413; 28 N. E. 616; 114 Ill. 57; 104 Ill. 201; 93 Ill. 580; 5 R. M. Dig. 114; 21 Pac. 797. *Signals for trestle:* 65 S. C. 214. *Burden of proof of marriage:* 4 Pac. 1003; 8 Ency. Ev. 441. *Evidence on former trial is admission:* 8 Ga. 61; 1 Ency of Ev. 481.

July 11, 1911. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. Plaintiff recovered judgment against defendant for $3,500 for the death of his intestate, caused by the wrongful acts of defendant.

Theodore P. Wade was employed by defendant as watchman on the Congaree River bridge. The complaint alleges that, on March 26, 1904, he was struck by a passing train, thrown from the bridge and killed; and that his death was caused by the negligent, reckless and wanton conduct of defendant's servants who were in charge of the train, in failing to keep a proper lookout for Wade or to give him any warning of the approach of the train, and in running it over the bridge at a reckless speed, in violation of the orders and bulletins issued by the defendant. The defendant set up the following defenses: 1. A general denial; 2. Assumption of risk; 3. Contributory negligence; 4. A release from

Lottie Wade, who it alleges is the widow of plaintiff's intestate, and the only person for whose benefit the action could have been brought.

The defendant's contention in evidence and argument, as to the manner of Wade's death, was that he attempted to get aboard a passenger coach which was attached to the end of an accommodation freight train, while the train was passing him on the bridge, between 5:30 and 6 o'clock in the afternoon of the day he was killed, and, while making that attempt, he either missed his footing and fell or was thrown from the bridge to the ground, forty feet below, and was killed. The reason assigned for his attempt to board this train, under the circumstances, was that it passed within a few minutes of the time for him to go off duty and by getting aboard he would have saved himself a long walk to his home in Columbia. There was some testimony tending to support this theory.

On the other hand, plaintiff's testimony tended to show that, at the time of the accident, the bridge was undergoing repairs, and a slow order or bulletin had been issued by defendant, limiting the speed of trains over it to six miles an hour; that, according to the rules, before any train could go upon the bridge, it must be brought to a full stop and the engineer must give a signal to the bridge watchman of four short blasts of the whistle, and remain stationary until he received a signal from the watchman to proceed, whereupon he gave two short blasts of the whistle to let the watchman know that he had received his signal to go forward; that between Cayce, a station several hundred yards south of the river, and Columbia, north of it, the road was operated under the block system; that no train was allowed to enter the block without receiving orders, and that it was against the rules for a train to enter the block while the semaphore at Cayce was up. Plaintiff's testimony tended to show that the train by which Wade was killed violated each of these rules and orders. There was, therefore,

testimony tending to show a reckless disregard of Wade's rights, and there was no error in refusing defendant's motion for nonsuit on the issue for punitive damages.

Photographs of the bridge and approaching trestle and surroundings were introduced over defendant's objection that they were taken long after the accident, and there was no evidence that the conditions were the same, when they were taken, as at the time of the accident; and also, because certain distances were indicated upon them, and certain remarks, explanatory of them, such as "Looking towards Cayce, 75 yards from river trestle." As to the first ground of objection, the presumption is that the condition of the bridge and trestle and surroundings at the time of the accident continued. If there had been any material change, defendant could easily have proved it. As to the other ground of objection, the record shows that one or more witnesses verified every mark or notation on the photographs, which was, in any way, material to the case.

There was testimony that the train which killed Wade ran past Cayce while the semaphore was down, without stopping and without getting the block; that Mr. Finck, the agent at Cayce, ran out as it was passing, and signalled it to stop; that Mr. Maxwell, defendant's train master, who had authority to direct the movement of trains on that part of the road, was on the rear platform of the train and saw Finck's effort to stop it, but "high-balled" it ahead. When Mr. Maxwell was on the stand, he was asked by plaintiff's attorney, if, on Tuesday after the accident, at Cayce, in the presence of Mr. Robert Thornton, he had not had some words with Mr. Finck about the accident, and if Mr. Finck had not then and there said to him: "Wade would never have been killed, if you had not taken that train in there." He denied it. In reply, plaintiff was allowed to contradict him by Mr. Thornton. Defendant excepts to this ruling on the ground that no foundation was laid for the contradiction, and on the further ground that Mr. Finck

had not himself been on the stand and testified as to that matter, and, on the further ground that, if true, it was not shown that Mr. Maxwell could bind defendants by such statements. In so far as it charges that the foundation for the contradiction was not laid, the exception was evidently taken without examining the record, which shows very clearly that the foundation was properly laid. We fail to see the force of the second ground of the objection,—that the contradiction was improper, because Mr. Finck had not testified about the matter. If it was competent to contradict the witness at all as to what Mr. Finck had said to him (as to which we make no ruling, because the exception does not raise that question) it was clearly immaterial whether Mr. Finck had testified about the matter or not. The last ground of the exception is also without force, because no statement of Mr. Maxwell was given in evidence. The statement or declaration given in evidence was that of Mr. Finck to Mr. Maxwell.

The next exception imputes error to the Circuit Court in allowing the plaintiff to prove, in reply, that Lottie Wade had testified at a former trial of the case that she had been married to John Hunt. The error assigned is that it was incompetent because Lottie Wade had not testified at this trial, and, therefore, could not be contradicted, or her testimony at the former trial be gotten before the jury in that way. The testimony was not offered to contradict Lottie Wade, for there was no evidence that she had ever denied so testifying. On the contrary, plaintiff was trying to prove that the fact was as she had testified, and had before proved, without objection, similar declarations made by her to numerous persons on different occasions. Hence, in so far as the testimony in question tended to prove the mere fact of Lottie's marriage to Hunt, it could not have been prejudicial. But it was competent for this reason: Defendant had taken a release from her, as widow of plaintiff's intestate, and set it up in

bar of plaintiff's action, alleging that it was taken after plaintiff had admitted on the record in open Court, at the former trial; that she had been married to plaintiff's intestate and in reliance upon that admission. It was therefore competent for plaintiff to show, in reply to that defense, that defendant knew, when the release was taken, that she had been married to Hunt before her marriage to Wade, and, therefore, her marriage to Wade was null and void, as it had not been shown that Hunt was dead or had been absent and not heard of for seven years.

The record states that one of plaintiff's attorneys argued to the jury that, by taking the release, defendant had admitted liability. Upon that point, both sides preferred requests to charge, and, in his general charge, the Judge said: "You cannot take it as plaintiff has requested me to charge you that the defendant has admitted liability for the killing of this man,—liability therefor by taking the release set out in the answer. The answer may contain many inconsistent defenses. You have to take them and separate them, and as separate as though the other did not exist. As here you have the first defense of general denial, denial of all these alleged acts of negligence; so the plaintiff has to prove all this. For instance, as if a man was sued on a note, it was alleged he owed another one a certain amount of money on a promissory note, he could come in and defend, and, in his answer, first claim he never executed any such note, and, secondly, claim the note had been paid; failing on one, he may fall back upon the other. You cannot take the pleadings and say, because one defense seemed to involve the admission of liability, that apparent inference of liability may be argued from it,—that that is a point-blank legal admission of liability. Those are matters counsel have the right to draw their inferences from, and argue them to the jury, and the jury may accept them or reject them, as they may be convinced." Appellant contends that taking the release was

no admission of liability, and that the jury should have been so instructed. The charge upon that point was correct. While it cannot be said, as matter of law, that taking a release is an admission of legal liability, neither can it be said, as matter of law, that consciousness of liability may not be reasonably inferred from doing so. Whether such inference should or should not be drawn depends upon all the circumstances, and is a question of fact which should ordinarily be left to the jury, as was properly done in this case.

The case of *Rookard* v. *Ry.*, 84 S. C. 192, 65 S. E. 1047, cited and relied upon by appellant, does not sustain its contention upon this point. If defendant had not set up the release, that case would have been authority for the exclusion of evidence to prove that defendant had settled with Lottie Wade or any other person for any injury growing out of the same transaction. But the defendant itself brought the release into the case by pleading it in bar of the action. Being properly in the case, it was properly left to the jury to say whether it was taken by defendant merely for the purpose of buying its peace without intending to admit liability, or whether it was obtained because of a consciousness of liability.

Having defined and explained negligence and contributory negligence, and mentioned the specifications of negligence alleged in the complaint, the Court continued: "If a failure to do one (that is, one of the things mentioned in the complaint, which plaintiff alleged defendant should have done for Wade's protection) is made out, and you find that, in the exercise of due care, they should have done some one or all of these things, then the case of negligence is made out against the railroad, and you would have to consider then the question of the defense raised in the answer." Appellant alleges that the Judge charged on the facts in the language quoted in that he therein told the jury what facts would constitute negligence. We think not. Appellant has evidently overlooked the following sentence in

that portion of the charge: "And (if) you find that, in the exercise of due care, they should have done some one or all of these things," which shows clearly that it was left to the jury to say whether the failure to do any one of these things specified was negligence.

Affirmed.